# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRIAN THOMAS SHERMAN,**

        **Plaintiff,**

**-vs-**                                            **Case No. 6:12-cv-916-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for Disability Insurance benefits under the Social Security Act. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff applied for a period of disability and disability insurance benefits, alleging that he became unable to work on March 30, 2010 (R. 191-92). The agency denied Plaintiff's application initially and upon reconsideration, and he requested and received a hearing before an administrative law judge ("the ALJ"). The ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 6-26). The Appeals Council declined to grant review (R. 1-5), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed his complaint in this action, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## Nature of Claimed Disability

Plaintiff claims disability from his alleged onset due to diabetes, pain from a herniated disc, depression and high cholesterol (R. 212).

*Summary of Evidence Before the ALJ*

Plaintiff was forty three years of age on the date of the ALJ's decision (R. 34), with a GED and past relevant work experience which includes work as a tow truck driver, a dishwasher, a delivery driver and security guard (R. 21, 38, 40-43).

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff and by his wife, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, with a herniated nucleus pulposus (HNP) at the L4-L5 disc level, diabetes mellitus, and depression (R. 11). The record supports this uncontested finding. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appx. 1 (R. 11-13), and found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b):

> with the following restrictions: the claimant can lift and carry 20 pounds frequently (which is defined as up to 2/3 of the day) and 10 pounds occasionally (which is defined as up to 1/3 of the day). He can sit for 4 hours at a time for a total of 8 hours in an 8-hour workday and stand/walk for 2 hours at a time for a total of 6 hours in an 8-hour workday. The claimant is precluded from climbing ropes, ladders, or scaffolds, but can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. The claimant does not have any significant manipulative limitations and has no visual, communicative, or environmental limitations. The claimant is mentally capable of performing simple to detailed tasks.

(R. 13). Citing the testimony of the Vocational Expert, the ALJ determined that, through the date of the decision, Plaintiff was capable of performing his past relevant work as a security guard and as an auction driver (R. 20-21) and, alternatively, was able to perform other jobs in the national economy (R. 21-22), and was therefore not under a disability at any time from March 30, 2010 through the date of the decision (March 9, 2012) (R. 22).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises a single issue on appeal: whether the ALJ applied correct legal standards at steps four and five of the sequential evaluation process.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Here, the issue presented by Plaintiff is narrow, and focuses exclusively on the ALJ's evaluation of Plaintiff's alleged depression. Specifically, Plaintiff contends that the Commissioner erred in "refusing" to consider limitations found at step two and three in the findings made at steps four and five.

*Steps Two and Three*

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R.

§ 404.1521.[1] An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The ALJ has a duty to consider all impairments, both singly and in combination, when making an analysis of disability.  20 C.F.R. § §  404.1523 and 416.923.

When evaluating a mental impairment at step two, the Commissioner is required to apply the "special technique" described in 20 C.F.R. § 416.920a. This technique requires the adjudicator to determine first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 416.920a(b)(1). If the claimant is found to have such an impairment, the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," 20 C.F.R. § 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are found, then the adjudicator "generally" will conclude that the claimant's mental impairment is not "severe." 20 C.F.R. § 416.920a(d)(1). If the mental impairment(s) are found to be severe, but the impairment neither meets nor is equivalent in severity to any listing, "we will then assess your residual functional capacity."  20 C.F.R. § 416.920a(d)(3).

As set forth above, the ALJ found Plaintiff's depression to be severe, within the meaning of step two of the analysis (R. 11).  As part of the required evaluation, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence or pace and moderate difficulties in social

---

[1] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

-5-

functioning (R. 12). Plaintiff contends that the ALJ "failed to include these limitations in the RFC assessment" at step three.

An RFC is not a listing of impairments or limitations. Rather, the RFC is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work *despite* his impairments. *Lewis v. Callahan,* 125 F. 3d 1436, 1440 (11th Cir. 1997). *See also* 20 C.F.R. § 404.1545 ("Your residual functional capacity is the most you can still do despite your limitations"). Here, it is clear from a review of the decision that the ALJ considered and fully evaluated Plaintiff's mental impairment at step two, *including* the limitations noted,[2] and determined that Plaintiff nonetheless had the RFC of being "mentally capable of performing simple to detailed tasks" (R. 13). As this finding is supported by substantial evidence, no error is shown. *See Smith v. Commissioner of Social Security*, 486 Fed. Appx. 874, 876 (11th Cir. 2012) (affirming step four finding that claimant could return to past relevant work where ALJ found claimant was moderately limited in his ability to maintain concentration, persistence and pace, but nonetheless could perform simple, routine and repetitive tasks).

Plaintiff next contends that the ALJ erred at steps four and five in that he "did not ask the vocational expert a hypothetical question that included Mr. Sherman's limitations in concentration, persistence, pace, or social functioning." Plaintiff argues that the hypothetical, which set forth the limitations found in the RFC, did not properly account for his moderate limitation in concentration, persistence or pace, and in social functioning which the ALJ noted at step two of the sequential evaluation.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*,

---

[2]In formulating the RFC, the ALJ explicitly stated that the RFC assessment "reflects the degree of limitation [he] has found in the "paragraph B" mental function analysis" (R. 13) and concluded that "claimant's depression is severe in nature, but does not preclude work within the above identified residual functional capacity" (R. 19).

284 F.3d 1219, 1227 (11th Cir. 2002). An ALJ, however, is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1161 (11th Cir. 2004).

The Eleventh Circuit has held that an ALJ's hypothetical question must take into account the ALJ's step two finding that a claimant has moderate limitations in maintaining concentration, persistence, and pace, unless the ALJ indicates that the medical evidence suggests that the claimant's ability to work is unaffected by the limitation or the ALJ's question implicitly accounts for the limitation. *See Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011). The Eleventh Circuit has more recently recognized that a hypothetical question could sufficiently account for a moderate limitation in concentration, persistence or pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite concentration deficiencies. *See Jarrett v. Commissioner of Social Security*, 422 Fed. Appx. 869, 872 (11th Cir. 2011); *Syed v. Commissioner of Social Security,* 441 Fed. Appx. 632, 635 (11th Cir. 2011); *Washington v. Social Security Administration, Commissioner*, 503 Fed. Appx. 881, 883 (11th Cir. 2013); *Scott v. Commissioner of Social Security*, 495 Fed. Appx. 27, (11th Cir. 2012); *Jacobs v. Commissioner of Social Security,* – Fed. Appx. –, 2013 WL 2436454 (11th Cir. Jun. 6, 2013) (unpub. dec.) ("the ALJ found that the evidence demonstrated that Jacobs retained a limited ability to work despite his depression and associated moderate difficulties in maintaining his concentration, persistence, or pace, and substantial evidence supports this finding. The ALJ's hypothetical questions to the vocational expert fully accounted for Jacobs's moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment.").[3]

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. The Court notes the consistency of these recent panel decisions interpreting *Winschel.*

Here, the medical evidence referenced by the ALJ demonstrates that, even with difficulties in concentration and social functioning, Plaintiff is able to perform simple to detailed tasks. Although, as noted by the ALJ, the medical evidence is very limited, and Plaintiff did not produce treatment records from any mental health provider, the records from other providers, discussed by the ALJ, support the findings with respect to Plaintiff's depression. The ALJ noted records from Plaintiff's orthopedist, which showed Plaintiff to be alert and oriented times three (R. 17, 400); records from his primary care physician, with normal findings (R. 17-18– *see* R. 327 – plaintiff denied psychiatric complaints, R. 328 – oriented to person, place and time, no mention of depression); and records from another provider, with unremarkable findings (R. 18-19, *see* R. 429, 432, 435, 438 – "psychiatric:  appropriate affect and demeanor; normal speech pattern; grossly normal memory;" R. 431 – "mental health history:  Negative"). The ALJ discussed an emergency room visit for back pain (R. 16). The hospital's records show Plaintiff's "mood and affect normal." (R. 308). On another occasion, Plaintiff was also noted to be "alert, oriented to person, place and time" with normal mood and affect (R. 317).  In addition to treating providers, the ALJ discussed the consultative examinations (R. 18 -20). Dr. Nitin Haté found Plaintiff's "mental functions and the speech are generally within normal limits' (R. 433). The findings and opinions of psychologist Anne-Marie Caroline Nicolas, Psy.D. were also noted, and addressed at length:

> In her report, Dr. Nicolas noted that claimant's complaints of symptoms such as sadness, crying spells, feelings of worthlessness and fitful sleep due to back pain as well as economic stressor. The claimant reported being psychiatrically hospitalized in 1998 and participating in psychotherapy between 1992 and 1995 and between 1999 and 2006. Despite his allegedly disabling depression, however, the claimant did not report undergoing any recent psychotherapy or taking any medications to control his alleged symptoms. In addition, the claimant's testimony at the hearing on February 23, 2012 also revealed that he is not currently engaging in any mental health treatment or taking medications for depression. Dr. Nicolas noted that the claimant reportedly eats three meals per day and that he is able to bathe, dress, and groom himself independently. **The claimant reported socializing with same age peers appropriately** and indicated that a typical day consists of watching television, doing yard work, and assisting with household chores such as cleaning the house, doing laundry, and cooking.

-8-

> In terms of the claimant's mental status, Dr. Nicolas indicated that the claimant was oriented times three, that he was casually attired and demonstrated fair basic grooming and hygiene, and that no fine motor shakes or tremors were noted. It is interesting to note that Dr. Nicolas indicated that the claimant demonstrated difficulty in ambulation and walked with a limp in her report, but that Dr. Haté's physical consultative examination report, which was dated one day after Dr. Nicolas' report, noted that the claimant's gait was normal with no localizing signs, and that no assistive devices were used. Dr. Nicolas indicated that the claimant's speech was logical and coherent, of normal rate and tone, and that no errors in articulation were noted. **Dr. Nicolas noted that the claimant was able to recall two out of three words after a two-minute interval, spell the word "world" forward and backward appropriately, and count by 3's to 40 appropriately. Dr. Nicolas opined that attention and concentration were good throughout the interview**, that thought processes appeared abstract, and that **no significant impairment in memory function was noted**. Dr. Nicolas opined that the claimant's mood was euthymic with broad affect and that his behavior was cooperative and appropriate. Dr. Nicolas diagnosed the claimant with major depressive disorder, recurrent, moderate, assigned a GAF score of 54, and essentially opined that the claimant's depression causes no more than moderate mental limitations.

(R. 19-20, 418-420 - emphasis added). By contrast, Plaintiff points to no medical records that support disabling mental limitations.

In addition to the medical records, Plaintiff's testimony and written reports support the RFC finding. As the ALJ noted:

> [Plaintiff] testified regarding numerous activities including doing housework, attending the movies and going out to dinner approximately once or twice per week, going to friends houses and going to church occasionally. Furthermore, he does the laundry at the laundromat with the help of a cart from his apartment complex. He also reported helping with the Veterans' organization cookouts by preparing the food and helping serve even though he is allowed to sit down during part of the work there.

(R. 20).

The ALJ also observed that Plaintiff has a driver's license and socializes with friends, has had a sporadic work history prior to the alleged onset,[4] reports no difficulty getting along with people, and takes no medication for his alleged depression (R. 14-15). The written reports include representations from Plaintiff and his wife that Plaintiff follows spoken and written instructions "very well" (R. 225, 239) and he can pay attention for "as long as needed" (R. 239, 278).

---

[4] The ALJ noted Plaintiff's testimony that he has looked for work but "he believes that a factor that impedes him from obtaining a job is his former felony conviction for sexual assault on a minor" (R. 14, 19). A felony conviction could well have vocational implications, but it is not a disabling medical impairment. *See* R. 13.

All of this evidence supports a finding that despite some difficulty in social functioning and concentration, persistence and pace, Plaintiff remains able to perform work within the RFC. Therefore, the ALJ's inclusion of a limitation to simple to detailed tasks in his hypothetical questions to the Vocational Expert fully accounted for the limitations Plaintiff's mental impairments caused, and is consistent with *Winschel.* Proper legal standards were applied.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

## Conclusion

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence.  It is therefore **AFFIRMED.**  The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 21, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record